IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

**LAURA ANN HOLIZNA AND KENNETH WADE HOLIZNA,**

          **Plaintiffs,**

v.                                        Civil Action No.  2:12-cv-06173

**BOSTON SCIENTIFIC CORP.,**

          **Defendant.**

**MEMORANDUM OPINION AND ORDER**
*(Defendant's Motion for Partial Summary Judgment)*

Pending before the court is the defendant's Motion for Partial Summary Judgment on Plaintiff Laura Holizna's Punitive Damages Claim and Memorandum in Support ("Motion") [Docket 90]. As set forth below, the defendant's Motion is **DENIED**.

**I.**     **Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 72,000 cases currently pending, approximately 16,000 of which are in the Boston Scientific Corporation ("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions and summary judgment motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs and defendant to

each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re Boston Scientific Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. The Holiznas' case was selected as a Wave 1 case by the plaintiffs.

The plaintiff, Laura Ann Holizna, was surgically implanted with the Obtryx Transobturator Mid-Urethral Sling System (the "Obtryx") and the Pinnacle Pelvic Floor Repair Kit (the "Pinnacle") to treat her SUI and POP on March 1, 2010. (*See* BSC's Mot. for Partial Summ. J. on Pl.'s Punitive Damages Claim & Mem. in Supp. ("Mem. in Supp.") [Docket 90], at 10). Dr. Michael Hulse performed the surgery at a hospital in Canton, Georgia. (*Id.*). Ms. Holizna claims that as a result of implantation of the Obtryx and the Pinnacle, she has experienced multiple complications, including "rectal pain, dyspareunia, colon spasms and terrible pain with bowel movements. Mesh eroded into her rectum, and she developed a rectovaginal fistula. . . . She has stress urinary incontinence much worse than she had prior to implant surgery." (*See* Pl. Fact Sheet [Docket 113-6], at 7). She brings the following claims against BSC: negligence; strict liability for design defect, manufacturing defect, and failure to warn; breaches of express and implied warranties; and punitive damages. (Compl. [Docket 1], at 18–36). Mr. Holizna brings a claim for loss of consortium. (*Id.* at 32). In the instant motion, BSC moves for summary judgment on the grounds that the Holiznas' claim for punitive damages is "without evidentiary or legal support." (Mem. in Supp. [Docket 90], at 1).

## II. Legal Standards

### A. Partial Summary Judgment

A partial summary judgment "is merely a pretrial adjudication that certain issues shall be deemed established for the trial of the case." Fed. R. Civ. P. 56 advisory committee's note. A motion for partial summary judgment is governed by the same standard applied to consideration of a full motion for summary judgment. *See Pettengill v. United States*, 867 F. Supp. 380, 381 (E.D. Va. 1994) (citing *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985)). To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to

preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

## B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases such as this. The choice of law for these pretrial motions depends on whether they involve federal or state law. "When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). In cases based on diversity jurisdiction, the choice-of-law rules to be used are those of the states where the actions were originally filed. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). Here, the action was originally filed in Georgia. (Compl. [Docket 1]). Thus, the choice-of-law principles of Georgia guide this court's choice-of-law analysis.

Georgia adheres to the doctrine of *lex loci delicti*, which dictates that "a tort action is governed by the substantive law of the state where the tort was committed." *Dowis v. Mud Slingers, Inc.*, 621 S.E.2d 413, 414 (Ga. 2005). "The place where the tort was committed, or, 'the locus delicti, is the place where the injury sustained was suffered rather than the place where the act was committed, or, as it is sometimes more generally put, it is the place where the last event

4

necessary to make an actor liable for an alleged tort takes place.'" *Bullard v. MRA Holding*, 740 S.E.2d 622, 625 (Ga. 2013) (quoting *Risdon Enter., Inc. v. Colemill Enter., Inc.*, 324 S.E.2d 738, 740 (Ga. 1984)). Ms. Holizna's alleged injury occurred in Georgia; therefore, Georgia law governs the plaintiffs' claims.

BSC argues that the law of Massachusetts—the place where the alleged misconduct occurred—is the site of the tortious activity and thus, Massachusetts law applies to the plaintiffs' punitive damages claim. (*See* Mem. in Supp. [Docket 90], at 13). According to BSC, the focus of the punitive damages inquiry is corporate conduct, and such conduct took place, if at all, in Massachusetts where the products were designed, manufactured, and labeled. (*Id.*). For support, BSC points to this court's ruling in *In re Ethicon*—where I held that the focus of the punitive damages inquiry was Ethicon's corporate conduct, and because that conduct allegedly occurred in New Jersey, New Jersey law applied. *In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-cv-4301, 2014 WL 186869, at *10 (S.D. W. Va. Jan. 15, 2014), *rev'd on other grounds*, No. 2:12-cv-4301, 2014 WL 457551 (S.D. W. Va. Feb. 3, 2014). BSC also points to other product liability cases where courts have applied an alternative state's punitive damages law based on where the corporate conduct occurred. *See Aguirre Cruz v. Ford Motor Co.*, 435 F. Supp. 2d 701, 706 (W.D. Tenn. 2006) (applying Michigan law for punitive damages where the corporate decisions, design of the product, and principal place of business all occurred in Michigan); *Zimmerman v. Novartis Pharm. Corp.*, 889 F. Supp. 2d 757, 760 (D. Md. 2012) (applying Tennessee's "significant relationship" approach to hold that New Jersey punitive damages law—where the conduct occurred—applied); and *Tobin v. AMR Corp.*, 637 F. Supp. 2d 406, 422 (N.D. Tex. 2009) (applying Texas law for punitive damages where injury occurred in Illinois but the defendants' corporate decisions were made in Texas).

5

BSC's analysis is flawed. The cases BSC cites are inapposite because they all use the "most significant relationship" test, while Georgia does not. In *In re Ethicon, Inc.*, this court applied Texas choice-of-law rules. 2014 WL 186869, at *2–3. Under Texas law, courts apply the "most significant relationship" test as enunciated by the Restatement (Second) of Conflicts (the "Restatement") to each substantive issue. *Id.* at *9. *Tobin* also applied the Restatement approach under Texas law. 637 F. Supp. 2d at 412. Similarly, *Aguirre Cruz* and *Zimmerman* applied Tennessee's choice-of-law rules, where Tennessee also employs the Restatement's "most significant relationship" approach. *See Aguirre Cruz*, 435 F. Supp. 2d at 704; *Zimmerman*, 889 F. Supp. 2d at 760. BSC cites to no authority where a Georgia court—state or federal—has ever construed *lex loci delicti* to be the place where the defendant engaged in wrongful conduct. Instead, Georgia's choice-of-law principles provide that a tort action is governed by the law of "the place where the injury sustained was suffered rather than the place where the act was committed." *Bullard*, 740 S.E.2d at 625. Ms. Holizna suffered her alleged injuries in Georgia, not Massachusetts. Therefore, I **FIND** that the laws of Georgia apply to the plaintiffs' punitive damages claim.

### III. Analysis

The question before the court is whether the plaintiffs have produced enough evidence to create a genuine issue of material fact as to whether BSC engaged in culpable conduct that meets Georgia's punitive damages standard. Under Georgia law, "[p]unitive damages may be awarded only in such tort actions in which it is proved by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Ga. Code Ann. § 51-12-5.1(b). "[P]unitive damages, the purpose of which is to 'punish, penalize or deter,' are, as a general rule, improper where a defendant has adhered to [the

6

relevant] safety regulations." *Stone Man, Inc. v. Green*, 435 S.E.2d 205, 206 (Ga. 1993). This is because "such compliance does tend to show that there is no clear and convincing evidence of willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of a conscious indifference to consequences." *Id.* However, regulatory compliance does not "preclude[] an award of punitive damages where, notwithstanding the compliance with applicable safety regulations, there is other evidence showing culpable behavior." *Gen. Motors Corp. v. Moseley*, 447 S.E.2d 302, 311 (Ga. 1994), *abrogated on other grounds by Webster v. Boyett*, 496 S.E.2d 459 (Ga. 1998).

As an initial matter, I reject BSC's argument that punitive damages are precluded because it complied with relevant safety regulations. As I have previously held, the regulations with which BSC complied are not related to safety and efficacy. *See generally Lewis v. Johnson & Johnson*, 991 F. Supp. 2d 748 (S.D. W. Va. 2014), *see In re C.R. Bard, Inc.*, No. 2:10-CV-01224, 2013 WL 2432871 (S.D. W. Va. June 4, 2013) (applying Georgia law). BSC contends that the plaintiff has not produced evidence of any BSC conduct that was so egregious as to warrant punitive damages. (Mem. in Supp. [Docket 90], at 16–19). BSC points to Dr. Hulse's testimony that his patients who were implanted with BSC mesh experience "substantially" less complications than with other types available for use in his practice, and that Dr. Hulse continues to use the Obtryx to treat his patients. (*Id.* at 17).

The plaintiff, on the other hand, relies on my decisions in *Hendricks v. Boston Scientific Corp.*, 51 F. Supp. 3d 638 (S.D. W. Va. 2014), and *Sanchez v. Boston Scientific Corp.*, 38 F. Supp. 3d 727 (S.D. W. Va. 2014). She argues that a reasonable jury could find that BSC's actions showed willful misconduct, malice, or wantonness because BSC was aware that the polypropylene used to construct the Obtryx and the Pinnacle was not intended to be permanently

7

implanted in the human body. (Resp. [Docket 113], at 17). The Obtryx and the Pinnacle are constructed using a polypropylene resin supplied by Chevron Phillips Chemical Company, LP. (MSDS [Docket 113-13], at 1). The material safety data sheet ("MSDS") authored by Chevron Phillips included the following warning:

> MEDICAL APPLICATION CAUTION: Do not use this Chevron Phillips Chemical Company LP material in medical applications involving permanent implantation in the human body or permanent contact with internal body fluids or tissues.

(*Id.*). Despite this warning, BSC used Chevron Phillips polypropylene in the Obtryx and the Pinnacle devices.

Additionally, the plaintiff references the written agreement between BSC and its polypropylene supplier ("the Agreement"), which cautioned BSC to make its own determination of the safety and suitability of the polypropylene material in its products. (Resp. [Docket 113], at 17). The Agreement provided:

> BEFORE USING ANY PSPC POLYPROPYLENE PRODUCT, BOSTON SCIENTIFIC IS ADVISED AND CAUTIONED TO MAKE ITS OWN DETERMINATION AND ASSESSMENT OF THE PSPC POLYPROPYLENE PRODUCT FOR USE BY, FOR OR ON BEHALF OF BOSTON SCIENTIFIC. IT IS THE ULTIMATE RESPONSIBILITY OF BOSTON SCIENTIFIC TO ENSURE THAT THE PSPC POLYPROPYLENE PRODUCT IS SUITED TO BOSTON SCIENTIFIC'S SPECIFIC APPLICATION.

(Chevron Agreement [Docket 113-16], at 1–2).

Despite the MSDS warning and the admonition from BSC's polypropylene supplier to conduct its own tests, BSC sponsored no clinical studies on either the Obtryx or the Pinnacle. (*See* Clinical Risk/Benefit Analysis (Obtryx Sling System) [Docket 113-19], at 5; Clinical Risk/Benefit Analysis (Pinnacle) [Docket 113-31], at 10). Furthermore, BSC never warned through the Directions for Use that the Obtryx and Pinnacle were made of a component— polypropylene—that was not safe for permanent implantation in the human body. (*See* Obtryx

8

DFU [Docket 113-35]; Pinnacle DFU [Docket 113-36]).

In light of this evidence, I **FIND** that under a clear and convincing standard, a reasonable juror could find that by ignoring a warning on the MSDS and neglecting to conduct clinical studies, BSC evinced "willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." Ga. Code Ann. § 51-12-5.1(b). Accordingly, BSC's motion for summary judgment on the issue of punitive damages is **DENIED**.

**IV. Conclusion**

For the reasons discussed above, it is **ORDERED** that BSC's Motion [Docket 90] be **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 21, 2015

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE